**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**KAREN M. SIMPSON,**

**Plaintiff,** **CIVIL ACTION NO. 13-14473**

**vs.**

**DISTRICT JUDGE MARIANNE O. BATTANI**

**COMMISSIONER OF SOCIAL SECURITY,** **MAGISTRATE JUDGE MONA K. MAJZOUB**

**Defendant.**
**________________________/**

# REPORT AND RECOMMENDATION

Plaintiff Karen Simpson seeks judicial review of Defendant the Commissioner of Society Security's determination that she is not entitled to Social Security benefits for her physical and mental impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 14) and Defendant's Motion for Summary Judgment (docket no. 17). Plaintiff filed a Response to Defendant's Motion. (Docket no. 18.) The motions have been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 4.) The Court has reviewed the pleadings, dispenses with a hearing pursuant to E.D. Mich. L.R. 7.1(f)(2), and issues this Report and Recommendation.

## I. RECOMMENDATION:

The Court recommends that Plaintiff's Motion for Summary Judgment (docket no. 14) be DENIED and that Defendant's Motion for Summary Judgment (docket no. 17) be GRANTED.

## II. PROCEDURAL HISTORY:

Plaintiff filed an application for Disability Insurance Benefits with a protective filing date of June 17, 2010, alleging that she had been disabled since January 5, 2010, due to cervicalgia and two strokes. (*See* docket no. 14; TR 16, 169.) The Social Security Administration denied benefits. (*See* TR 16.) Plaintiff requested a *de novo* hearing, which was granted, but on June 17, 2011, Plaintiff's attorney withdrew Plaintiff's request, which resulted in a dismissal of Plaintiff's claim. (*See* TR 120.) Plaintiff appealed the dismissal, alleging that she had been misrepresented. (TR 121.) The Appeals Council remanded the matter for a hearing, which was held on February 8, 2012, before Administrative Law Judge (ALJ) Patricia S. McKay, who subsequently found that Plaintiff was not entitled to benefits because she was capable of performing her past relevant work as a security guard and as a ratio verifier. (TR 16-25.) The Appeals Council declined to review the ALJ's decision (TR 1), and Plaintiff commenced this action for judicial review. The parties then filed their instant Motions.

## III. PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE, AND VOCATIONAL EXPERT TESTIMONY

### A. Plaintiff's Testimony and Medical Record

Plaintiff suffered a stroke on January 5, 2010. Plaintiff alleges that since that time, she has suffered from daily pain, particularly in her shoulders and neck, weakness on her left side, numbness in her hands and feet, cramping in her hands, difficulty walking and standing, memory problems, and episodes of blurred vision. (*See* docket no. 14 at 8.) Plaintiff (*Id.* at 8-13) and the ALJ (TR 20-23) each set out a factual background related to Plaintiff's medical record and her hearing testimony. Defendant adopts the ALJ's recitation of facts. (Docket no. 17 at 5.) There are no inconsistencies between Plaintiff's account of her medical record and her testimony and the ALJ's account of the same with the exception of those discrepancies noted herein. Thus, these factual recitations are

incorporated by reference. Nevertheless, the undersigned has conducted an independent review of Plaintiff's medical record and the hearing transcript and will include comments and citations as necessary throughout this Report and Recommendation.

**B. The Vocational Expert**

The ALJ asked the VE consider a hypothetical individual with the following RFC:

> . . . [A]ssume that we have a hypothetical claimant with [Plaintiff's] age, education and past work experience who has the residual functional capacity to perform the full range of light exertional work who has the following additional limitations. This person can only occasionally climb stairs. She can only occasionally crouch or crawl or kneel or stoop or bend. She needs to avoid workplace hazards which would be dangerous moving machinery or unprotected heights so I don't want her climbing any ladders either.

(TR 56.) The ALJ then asked the VE if such an individual could perform Plaintiff's past relevant work. The VE testified that she could perform her past work as a security guard, a ratio verifier, or a home health attendant. (TR 56.)

The ALJ then asked the VE to assume that the individual also needed to avoid continuous exposure to pulmonary irritants. (TR 57.) The VE stated that such a limitation would have no effect on Plaintiff's past relevant work. (TR 57.) The ALJ then asked the VE to assume that the same individual needed to "limit her use of her left upper extremity, that's her non-dominant arm, non-dominant hand using it on an occasional basis as opposed to more often such as frequent." (TR 57.) The VE testified that this would "not affect the past work at all." (TR 57.) The VE also testified that these positions would not be effected by a limitation to "occasional use of her left lower extremity for foot controls or pedals, but he noted that the job base would be eroded somewhat if the individual need to "avoid jobs that require fine visual acuity." (TR 58.) The VE added, however, that such an individual could perform work as an inspector, a machine operator, or an information clerk. (TR 59.)

The ALJ then asked the VE whether the security guard, ratio verifier, or home health attendant positions would "require anything more than occasional contact with co-workers or the general public." (TR 60.) The VE testified that of the jobs listed, including the three additional jobs noted by the VE, only the information clerk would require more than occasional interaction. (TR 60.) When asked, the VE further testified that the job base would be eroded, but not eliminated, if the individual also required a sit-stand option. (TR 60-61.) The VE added that there would also be sedentary jobs available with these limitations and some additional limitations raised by the ALJ.[1] (TR 61-62.)

**IV. ADMINISTRATIVE LAW JUDGE'S DETERMINATION**

The ALJ found that Plaintiff met the insured status requirements of the Act through the date of her decision; that she had not engaged in substantial gainful activity since January 5, 2010, the date of her alleged onset; and that she had severe cervicalgia and cervical disc disease. (TR 18.) And despite Plaintiff's allegations, the residual effects of her stroke (including her physical and mental impairments) "generally occurred in the short term with no residual problems substantial enough to constitute 'severe' impairments lasting or expecting to last twelve or more months" and her hypertension, asthma, and GERD did "not significantly limit [her] ability to perform basic work activities." (TR 18-20.) The ALJ further found that her impairments did not meet or equal those listed in the Listing of Impairments and that while Plaintiff's allegations regarding the extent of her symptoms were not wholly credible, Plaintiff had the following RFC:

> [Plaintiff can] perform light exertional work . . . but is able to occasionally climb stairs, crouch, crawl, kneel, stoop/bend and must avoid workplace hazards such as moving machinery, unprotected heights, and climbing ladders.

---

[1]The additional limitations and discussion between the ALJ and the VE are irrelevant for purposes of the instant Motions.

(TR 20-23.) Notably, the ALJ did not include any mental limitations in Plaintiff's RFC. The ALJ then determined, in reliance on the VE's testimony, that Plaintiff was capable of performing her past relevant work as a security guard or a ratio verifier. (TR 23-24.) The ALJ alternative found, however, that if she were to give Plaintiff "an unduly generous benefit of the doubt as to her need to avoid jobs requiring fine visual acuity due to the alleged effect of . . . floaters," she could also perform work as an inspector, a machine operator, or an information clerk. (TR 24.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act from January 5, 2010, through the date of her decision. (TR 25.)

## V. LAW AND ANALYSIS

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by

substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

**B. Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1) Plaintiff was not presently engaged in substantial gainful employment; and

(2) Plaintiff suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only

'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

**C. Analysis**

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D.Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174). Plaintiff argues that this matter should be reversed or remanded because (1) the ALJ failed to properly account for Plaintiff's mental impairments at Step 2 and Step 4; (2) the ALJ failed to properly account for Plaintiff's stroke residuals at Step 2 and Step 4; and (3) the ALJ erred when she found that Plaintiff could perform light work and semi-skilled work. (Docket no. 14 at 14-24.)

**1. The ALJ's Consideration of Plaintiff's Mental Impairments.**

Plaintiff initially asserts that the ALJ erred when she "failed to find Plaintiff's depression and other psychological impairments were severe" at Step 2. (*Id.* at 14.) She acknowledges, though, that a failure to find an impairment severe at Step 2 is harmless where the ALJ finds other severe impairments and the alleged impairment is considered at Step 4 when determining Plaintiff's RFC.

(*Id.* at 14-15); *see Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003). The ALJ did find that Plaintiff had severe impairments; thus, in substance, Plaintiff argues not that the ALJ failed to determine that her mental impairments were severe but that the ALJ failed to properly consider her mental impairments when determining her RFC. (*See* docket no. 14 at 15-19.) And in that light, Plaintiff specifically argues that the ALJ improperly weighed the opinions of Drs. Nick Boneff and Elaine Tripi. (*Id.*)

The ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2). But it is equally well settled that the ultimate issue of disability is reserved to the Commissioner and not the treating or examining physician. *Kidd v. Comm'r*, 283 Fed. Appx. 336, 341 (6th Cir. 2008). Thus, when a medical or non-medical source offers an opinion on "an issue reserved to the Commissioner, such as whether the claimant is disabled, the ALJ need not accord that opinion controlling weight." *Id.* (citing *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007)). The opinion of an examining source is generally accorded more weight than is the opinion of a source who did not examine the claimant. 20 C.F.R. § 404.1527(c)(1). The opinion of a state agency medical or psychological consultant is reviewed in the same manner as is the opinion of a nonexamining physician or psychologist. 20 C.F.R. §404.1527(e).

But regardless of the weight ultimately afforded, the Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion." 20 C.F.R. § 404.1527(c)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons

for that weight." *Wilson v. Comm'r*, 378 F.3d 541, 544 (6th Cir. 2004) (citing Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *5 (1996)). If the opinion of a treating source is not afforded controlling weight, an ALJ must apply certain factors in determining what weight to give the opinion, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source. *Wilson*, 378 F.3d at 544 (citation omitted). Even then, a finding that a treating-source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to controlling weight, not that the opinion should be rejected. Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *4.

Notably, though, the Sixth Circuit has upheld the decision of an ALJ that gave less than controlling weight to a treating physician without specifically analyzing the factors set forth in 20 C.F.R. § 404.1527(c) where the ALJ provided "good reason" for the decision. *See Infantado v. Astrue*, 263 Fed.Appx. 469, 473-74 (6th Cir. 2008). That is, there is no per se rule that requires an articulation of each of the six regulatory factors listed in 20 C.F.R. § 404.1527(c)(2)-(6). *Norris v. Comm'r*, No. 11-11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r*, 394 Fed. Appx. 216, 222 (6th Cir. 2010)). Moreover, an ALJ's failure to discuss the factors of § 1527(c)(2)-(6) may constitute harmless error (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [Section 1527(c)]—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Nelson*

*v. Comm'r*, 195 Fed. Appx. 462, 470 (6th Cir. 2006) (citing *Wilson v. Comm'r*, 378 F.3d 541, 547 (6th Cir. 2004)).

With regard to Dr. Boneff, an SSA examining physician, Plaintiff asserts that the ALJ erred because she never stated what weight she gave the doctor's opinion and because the ALJ's determination conflicted with Dr. Boneff's opinion. (Docket no. 14 at 15.) These arguments are intertwined as an ALJ's final determination will not likely comport with a medical opinion if the ALJ rejects that opinion. Thus, the issue before the Court is whether the ALJ erred when she rejected Dr. Boneff's opinion. While Plaintiff is correct that the ALJ did not specify the weight that she gave Dr. Boneff's opinion, as Defendant points out, an ALJ's analysis is sufficient where it "is apparent that the ALJ was aware of [her] obligation to consider the government doctors' findings." (Docket no. 17 at 10 (citing *Thacker v. Comm'r of Soc. Sec.*, 99 Fed. App'x 661, 664 (6th Cir. 2004).) Here, the ALJ not only acknowledged her obligation to consider Dr. Boneff's report, she did consider Dr. Boneff's report.

When determining Plaintiff's RFC, the ALJ found as follows:

> Claimant is depressed secondary to the cerebrovascular accidents, but Dr. Boneff's psychological evaluation failed to support this was a severe impairment. Indeed, the claimant demonstrated good reality contact, and her memory and cognition were not highly impaired. The doctor determined that she could do some work activities from a mental perspective. In addition, her scores on the WAIS would not preclude employment of a simple nature. Therefore, the undersigned does not find the GAF levels reported throughout the record to be controlling. Moreover, the Commissioner "has declined to endorse the [GAF] score for 'use in the Social Security and [SSI] disability programs,' and has indicated that [GAF] scores have no 'direct correlation to the severity requirements of the mental disorders listings.'"

(TR 21) Notably, Plaintiff relies primarily on her GAF scores to argue that the ALJ failed to consider Dr. Boneff's opinion, but the ALJ's opinion leaves no question that she was aware of Plaintiff's GAF scores and gave them no weight. Thus, while Plaintiff disagrees with the ALJ's

determination and points to some evidence to support her perspective, the ALJ's decision is sufficiently specific to make clear the weight she gave to Dr. Boneff's opinion and the reason for that weight. Even if the Court agrees with Plaintiff's substantive analysis, the ALJ's opinion is also supported by substantial evidence; therefore, her decision falls within an ALJ's zone of choice and should not be disturbed.[2]

Likewise, with regard to Dr. Tripi's opinion, Plaintiff contends that the ALJ's decision to give the doctor's opinion "no weight" was error. (Docket no. 14 at 16.) The ALJ discussed the opinion as follows:

> This opinion is the result of a one-time evaluation and was created specifically for the purposes of this claim - it did not arise out of any treating relationship with the claimant. Further, this opinion is not consistent with the medical diagnosis in the record nor is it supported by the other evidence of record.

(TR 22.) As the opinion of a non-treating source, Dr. Tripi's opinion was not entitled to controlling weight. Plaintiff argues that the ALJ's determination is in error because Dr. Tripi's opinion is supported by a "battery of tests" and because the ALJ failed to acknowledge that Dr. Tripi worked as a Vocational Expert for the SSA for several years. (Docket no. 14 at 17.) But nothing in the ALJ's decision suggests that she failed to consider all of the evidence of record. To the contrary, the ALJ provided a detailed explanation of the evidence she found contradictory to the medical opinions:

> Pursuant to the claimant's functional report, she can prepare light meals, wash dishes

---

[2]In her Response to Defendant's Motion, Plaintiff acknowledges that "Defendant *and the ALJ* also cite to other facts in the record to support the conclusion that the clamant is not mentally limited by her impairments." (Docket no. 18 at 9 (emphasis added).) Plaintiff argues that these "facts only tell part of the story" and then draws the Court's attention to additional facts in support of her argument. But for the reasons discussed herein, Plaintiff's argument supports a finding that the ALJ did not err because the facts that "support the conclusion" of the ALJ amount to substantial evidence.

> do laundry, drive a car, and she cared for her disabled husband. . . . She alleged that she does not interact with people liek the way she did before the strokes, but she still visits and talks on the phone, and she does not describe any specific problem in getting along with friends and family . . . . She focuses will enough to be able to read and drive . . . Overall, the claimant only has a mild case of depression as a result of her strokes. She is not under treatment for the condition, and the undersigned concludes that it is not severe within the meaning of the [Act].

(TR 21.) Again, even if the Court disagrees with the ALJ's determination, her decision is supported by substantial evidence and is sufficiently specific to make clear the weight given to Dr. Tripi's opinion and the reasons for that weight. The ALJ's decision should not be disturbed in this regard.

Additionally, Plaintiff argues that the ALJ erroneously gave "some weight" to the opinion of state agency physicians where there was an internal inconsistency in the opinion. (Docket No. 14 at 17-18.) Plaintiff asserts that in one portion of the opinion, her Affective Disorder was categorized as "severe," while on the next page, the examiner stated that Plaintiff's mental impairment was "not severe." As Defendant argues, however, a review of the opinion itself shows that the ALJ properly considered this opinion. While the SSA examiner did find that Plaintiff's primary affective disorder was "severe" when listing her medically determinable impairments, he found in considering the "Listing Criteria" that her restrictions on activities of daily living; difficulties in maintaining social functioning; and difficulties in maintaining concentration, persistence, and pace were all "mild." (TR 74-75.) The examiner further found that Plaintiff's statements were only "partially credible" as her statements could not be supported by objective medical evidence alone. (TR 75-76.) Thus, the examiner's statement that Plaintiff's Affective Disorder was "severe" was a recommendation to the ALJ for a Step-2 finding. That the ALJ disagreed with this recommendation is irrelevant for the reasons discussed above. And the ALJ's further determination to give "some weight" to the examiner's determination that Plaintiff's listing criteria were all "mild" is not contradicted by the evidence. Therefore, Plaintiff's Motion should

be denied with regard to this issue.

**2. The ALJ's Consideration of Plaintiff's Stroke Residuals**

Plaintiff asserts that the ALJ "did not mention that cerebrovascular accident (CVA, or stroke) was one of the diagnosis noted in [a] letter submitted from [Plaintiff's] treating physician Dr. Mendiratta indicating that Plaintiff was to remain off work;" that the ALJ "glossed over the fact that a brain angiogram performed in 5/27/2011 was abnormal, showing probably left internal carotid artery aneurysm;" and that the ALJ "did [not] discuss many of Plaintiff's residual diagnoses or findings with discussing Plaintiff's symptoms since her stroke." (Docket no. 14 at 19.) Plaintiff notes that treatment records show the existence of weakness, fatigue, night sweats, balance issues, handwriting changes, bladder urgency, difficulty opening jars, cramping, and numbness and tingling. (*Id.*) Primarily, however, Plaintiff argues that the ALJ failed to consider her visual impairments–specifically, intermittent floaters–and that the ALJ failed to consider "that a stroke can be caused by the existence of a cerebral aneurysm at one point in time, and that a cerebral aneurysm need not be present on all objective testing in order to result in a stroke." (*Id.* at 19-20.)

As discussed with regard to her mental limitations, it is irrelevant that the ALJ failed to determine that Plaintiff's stroke residuals were a severe impairment because the ALJ found other severe impairments and discussed any resulting limitations when determining her RFC. That the ALJ found there were no resulting limitations is inapposite unless such a determination was, in itself, error. The undersigned finds that it was not.

As Defendant notes, "Plaintiff loses sight of the fact that just because she had a stroke does not mean she was disabled by it." (Docket no. 17 at 15.) With regard to her physical impairments, the ALJ noted that as follows

> Objective work-up of the claimant's brain was largely negative, and MRIs of her

> cervical spine indicated generalized discogenic and degenerative changes. . . . [N]either Dr. Shelby-Lane nor Dr. Jenkins could identify a neurological deficit of any significance, and there have been no electrodiagnostic studies demonstrating a radiculopathy, plexopathy, or neuropathy. Moreover, the record does not confirm the presence of a cerebral aneurysm and despite the claimants' contention of blurred vision, her visual acuity was 20/20 bilaterally on examination. . . .

(TR 21.) The ALJ further found that

> [t]he file does not identify major brain trauma, nerve damage, or debilitating depression. Serious medication side effects also are not well corroborated, and she appears to have exaggerated her need to lie down during the day. Her gait is intact.

(TR 22.) Thus, while Plaintiff may disagree with the ALJ's findings, his determination that the limiting effects of her stroke are not as severe as she alleges is supported by substantial evidence. As with her mental impairments, Plaintiff's ability to point to evidence supporting an opposite conclusion is insufficient for the Court to disturb the ALJ's findings, even where the Court would find otherwise.

Moreover, with regard to Plaintiff's alleged blurred vision, the ALJ accounted for this limitation in his alternate Step-5 finding. Specifically, in reliance on the VE's testimony, the ALJ found that "giving [Plaintiff] an unduly generous benefit of the doubt as to her need to avoid jobs requiring fine visual acuity due to the alleged effect of . . . floaters," she could also perform work as an inspector, a machine operator, or an information clerk. (TR 24.) For the reasons stated, Plaintiff's Motion should be denied with regard to this issue.

### 3. Plaintiff's Ability to Perform Light and Semi-Skilled Work

Plaintiff also asserts that the ALJ erred in finding that Plaintiff could perform light work because "light work" requires lifting and Dr. Shelby-Lane's opinion states that Plaintiff would have difficulty lifting, pushing, pulling, and climbing stairs. (Docket no. 14 at 22.) As Defendant argues, however, this argument mischaractarizes Dr. Shelby-Lane's opinion. (Docket no. 17 at 18.)

Specifically, Dr. Shelby-Lane opined that Plaintiff "would have difficulty with dancing, lifting, pushing, pulling, or climbing stairs;" the doctor did not opine that Plaintiff would be unable to perform these activities. (TR 337.) To the contrary, Dr. Shelby-Lane's examination report notes that Plaintiff maintained the "current ability" to perform all of the activities listed. (TR 340.) Thus, the ALJ's determination is supported by substantial evidence. Moreover, though, the ALJ did account for some postural limitations in Plaintiff's RFC by finding that she could only "occasionally climb stairs, crouch, crawl, kneel, stoop/bend." (TR 20.)

Plaintiff also briefly argues that the ALJ erred when she failed to include any limitations with regard to weakness in her upper extremities or her problems standing. The ALJ, however, did not find these allegations credible. Therefore, for the reasons discussed herein, Plaintiff's Motion should be denied.

## VI. CONCLUSION

For the reasons stated herein, Plaintiff's Motion for Summary Judgment (docket no. 14) should be DENIED and Defendant's Motion for Summary Judgment (docket no. 17) should be GRANTED.

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638

F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: February 25, 2015

s/ Mona K. Majzoub
MONA K. MAJZOUB
UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: February 25, 2015

s/ Lisa C. Bartlett
Case Manager