UNTIED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KAREN M. SIMPSON,

       Plaintiff,

                             CASE NO. 2:13-cv-14473

v.

                             HON. MARIANNE O. BATTANI

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

_____/

**OPINION AND ORDER OVERRULING THE PLAINTIFF'S OBJECTIONS
AND ADOPTING THE REPORT AND RECOMMENDATION**

**I.     INTRODUCTION**

      Before the Court are the Plaintiff's objections to Magistrate Judge Majzoub's

February 25, 2015, Report and Recommendation ("R&R").  (Doc. 20.)  In the R&R (Doc.

19), the Magistrate Judge recommended that the Court grant Defendant's motion for

summary judgment (Doc. 17) and deny Plaintiff's motion for summary judgment (Doc.

14).  For the reasons that follow, the Court **OVERRULES** the Plaintiff's objections and

**ADOPTS** the R&R.

**II.    STATEMENT OF FACTS**

      As the parties have not objected to the R&R's adoption of the facts as set forth

by the Administrative Law Judge (ALJ), the Court likewise adopts the facts as stated by

the ALJ.  (See Doc. 19, p. 2.)

**III.   STANDARD OF REVIEW**

     **A.  Objections to a Magistrate Judge's R&R**

A district court must conduct a *de novo* review of the parts of a magistrate judge's report and recommendation to which a party objects.  28 U.S.C. § 636(b)(1).  The district "court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate" judge.  Id.  The requirement of *de novo* review "is a statutory recognition that Article III of the United States Constitution mandates that the judicial power of the United States be vested in judges with life tenure."  United States v. Shami, 754 F.2d 670, 672 (6th Cir. 1985).  Accordingly, Congress enacted 28 U.S.C. § 636(b)(1) to "insure[ ] that the district judge would be the final arbiter" of a matter referred to a magistrate.  Flournoy v. Marshall, 842 F.2d 875, 878 (6th Cir. 1987).

The Sixth Circuit has made clear that "[o]verly general objections do not satisfy the objection requirement."  Spencer v. Bouchard, 449 F.3d 721, 725 (6th Cir. 2006).  Only specific objections are entitled to *de novo* review; vague and conclusory objections amount to a complete failure to object as they are not sufficient to pinpoint those portions of the R&R that are legitimately in contention.  Mira v. Marshall, 806 F.2d 636, 637 (6th Cir.1986) (per curiam).  "The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious."  Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995).  "'[O]bjections disput[ing] the correctness of the magistrate's recommendation but fail[ing] to specify the findings . . . believed [to be] in error' are too general."  Spencer, 449 F.3d at 725 (quoting Miller, 50 F.3d at 380).

**B.  Standard of Review Applicable to Social Security Cases**

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (internal quotation marks omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

When reviewing the Commissioner's factual findings for substantial evidence, the Court is limited to an examination of the record and must consider that record as a whole. Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992). There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. Kornecky v. Comm'r of Soc. Sec., 167 F. App'x 496, 508 (6th Cir. 2006). Further, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007).

**IV. DISCUSSION**

3

**A.  Objections to the ALJ's Consideration of Plaintiff's Mental Impairments**

Plaintiff first objects to the allegedly inadequate evaluation of the medical opinions rendered by Nick Boneff, Ph.D., and Elaine M. Tripi, Ph.D., regarding her psychological impairments.  As set forth in Magistrate Judge Majzoub's R&R, a treating physician's opinion must be afforded complete deference if it is supported by clinical and laboratory diagnostic evidence and is not inconsistent with other substantial evidence in the record.  See 20 C.F.R. § 404.1527(c).  Similarly, opinions rendered by examining sources are granted greater deference than opinions rendered by sources who did not examine the claimant.  Id.  An ALJ, however, is not bound by the opinion of an examining or treating source if good reasons for the weight assigned to such a source are articulated in the decision.  Smith v. Comm'r of Soc. Sec., 482 F.3d 873, 875 (6th Cir., 2007).

Dr. Boneff conducted a consultative examination of Plaintiff on September 22, 2010, and diagnosed her with depression, secondary to general medical condition, with a Global Assessment of Functioning (GAF) score of 50, indicating serious symptoms. (Tr. 331.)  He further opined that she would be capable of performing "work-type activities of a moderate degree of complexity, remembering and executing a several step procedure on a sustained basis, insofar as her physical condition allows."  (Tr. 332.)  Upon evaluating this opinion, the ALJ determined that Dr. Boneff's assessment did not support a finding of a severe psychological impairment.  (Tr. 21.)  Specifically, the ALJ noted that she demonstrated "good reality contact, and her memory and cognition were not highly impaired."  (Id.)

4

Plaintiff consulted with Dr. Tripi on December 16, 2011, in order to conduct a psychosocial assessment and intelligence testing. (Tr. 400.) According to the Wechsler Adult Intelligence Scale-IV (WAIS-IV), Plaintiff obtained a full-scale IQ score of 89, placing her in the low average range of intelligence. (Tr. 401.) The Bender Visual Motor Gestalt Test, which tests simple motor and perceptual ability, resulted in below average performance attributable to Plaintiff's cerebrovascular accidents (or strokes) in early 2010. (Tr. 402.) Overall, Dr. Tripi diagnosed Plaintiff with adjustment disorder related to her general medical condition and assigned her a GAF score of 46. (Id.) The ALJ assigned this opinion no weight because it was "the result of a one-time evaluation and was created specifically for purposes of this claim." (Tr. 22.) Further, she found that the opinion was inconsistent with the medical diagnosis in the record and with the other evidence in the record. (Id.)

The ALJ's reasoning for deciding not to credit these medical sources' diagnosis of depression is adequately explained and supported by substantial evidence in the record. There is no evidence that Plaintiff received any treatment or counseling from a therapist or psychologist. Further, Plaintiff denied ever having been treated with psychiatric medications. (Tr. 329.) The ALJ's "B-Criteria" findings that Plaintiff has only mild impairments in activities of daily living, social functioning, and concentration, persistence, and pace, as well as no episodes of decompensation, are also supported. The state agency reviewing source, Ken Lovko, Ph.D., found that although Plaintiff had a medically determinable impairment of affective disorder, that impairment was not severe. (Tr. 74-75.) Specifically, he found that Plaintiff was capable of performing a wide range of tasks and that her functioning was primarily impacted by physical

5

concerns.  (Id.)  The ALJ also relied on Plaintiff's function report when making "B-Criteria" findings.  (Tr. 21.)  Plaintiff contends that the ALJ's reading of her function report was inaccurate.  For example, although the ALJ stated that Plaintiff was capable of preparing light meals, washing dishes, and doing laundry, her function report indicates that she received help with these chores or that they would take her all day to complete.  (See Tr. 195-201.)  While the ALJ's description of Plaintiff's self-reported activities lacks some specificity, it is nonetheless accurate in concluding that Plaintiff appears capable of many everyday tasks.  She reports no trouble with personal care, is able to "oversee" her children in normal daily lifestyle activities, prepares light meals with help for "30 minutes plus," wash dishes, and grocery shop once a week for "30 minutes plus."  (Id.)

Lastly, it is relevant to observe that the only work-related mental limitation suggested by Drs. Boneff and Tripi concern Plaintiff's ability to perform only non-complex tasks.  Although such a limitation is not included in the Residual Functional Capacity  (RFC), the jobs the ALJ determined Plaintiff was capable of performing at Steps 4 and 5 are limited to unskilled and semi-skilled positions.  Accordingly, the Court agrees with and adopts the conclusions rendered by the Magistrate Judge concerning Plaintiff's psychological impairments and the ALJ's consideration of the medical evidence.

### B.  Objections to the ALJ's Consideration of Plaintiff's Stroke Residuals

Plaintiff also contends that the ALJ erroneously dismissed Plaintiff's residual impairments following her stroke as "non-severe" at Step 2.  Further, this cannot be considered a harmless error because the RFC does not accurately accommodate her

physical or mental impairments resulting from the stroke.  Specifically, the RFC does not take into consideration her alleged upper extremity weakness or difficulty standing.

In the decision, the ALJ considered Plaintiff's emergency room visits in January and March 2010, where she presented with numbness and tingling in the left side her face and in her left arm.  (Tr. 19.)  In January, Plaintiff was recommended to have an outpatient MRI, but insurance-related issues prevented the test, and her symptoms appeared to have resolved.  (Tr. 250, 256.)  The ALJ noted that a CT scan of the brain conducted in March did not reveal intracranial hemorrhage or mass effect.  (See Tr. 250.)  Plaintiff's treating physician, Surinder Mendiratta, M.D., also noted in March that an MRI of the brain was negative, and instead focused his evaluation and treatment on her cervical degenerative joint disease.  (Tr. 299.)  Indeed, an MRI of the cervical spine revealed generalized intervertebral disc desiccation with mild to moderate disc foraminal stenosis. (Tr. 320.)

At a consultative examination conducted on September 22, 2010, with Cynthia Shelby-Lane, M.D., Plaintiff complained only of cervicalgia and chronic neck pain.  (Tr. 334.)  Plaintiff's neurological examination was completely normal, and Dr. Shelby-Lane diagnosed cervicalgia, anxiety/depression, bronchitis, hypertension, and hyperlipidemia.  (Tr. 336.)  The only physical restrictions suggested were difficulties with dancing, lifting, pushing, pulling, and climbing stairs.  (Tr. 337.)  The ALJ also discussed Plaintiff's treatment with neurologist Tessy C. Jenkins, M.D.  (Tr. 19.)  A neurologic examination performed by Dr. Jenkins in March 2010 was normal.  (Tr. 351.)  Although an MRI of the brain performed in May 2011 was positive for a possible left internal carotid artery aneurysm (Tr. 376), a subsequent MRI performed in August 2011 was negative for an

aneurysm (Tr. 390).  In reviewing this evidence, the state agency medical examiner,
Muhammad Khalid, M.D., found that Plaintiff suffered from a severe physical impairment
of spine disorder but did not consider the residual effects from a stroke to be a medically
determinable impairment.  (Tr. 74.)  The RFC recommended by Dr. Khalid is consistent
with that adopted by the ALJ.  (Tr. 76-77.)

In light of this evidence, the ALJ's RFC is supported by substantial evidence, and
Plaintiff does not identify any objective evidence that undermines these conclusions.
Although Plaintiff complains that she experiences weakness in her upper extremities,
she presents no evidence demonstrating that her limitations are more restrictive than
accounted for in the RFC.  Likewise, no evidence corroborates her assertion that she
has difficulty standing, as her gait and stance have been observed to be normal, with no
difficulty getting on and off an examination table.  (See Tr. 336.)  The fact that Plaintiff's
treating physician, Dr. Mendiratta, wrote a note stating that Plaintiff "may remain off
[from work] from 1/1/2012 thru 06/01/2012" does not support a finding of disability.  As
discussed by the ALJ, this note does not support the alleged onset date, which predates
this period by two years.  (Tr. 22.)  Furthermore, it does not support a finding that
Plaintiff's impairments are permanent or meet the twelve-month durational requirement
for disability.  See Social Security Ruling 82-52.  The ALJ's decision not to afford this
note controlling weight was therefore supported by the record.  Accordingly, the Court
adopts the Magistrate Judge's recommendations with respect to Plaintiff's alleged
residual stroke symptoms.

8

## V.  CONCLUSION

The Court notes that the R&R identifies and addresses much of the same evidence and comes to the same conclusions as discussed here.  Accordingly, for the foregoing reasons, the Court **OVERRULES** the Plaintiff's objections and **ADOPTS** the R&R granting Defendant's motion for summary judgment and denying Plaintiff's motion for summary judgment.

**IT IS SO ORDERED.**

Date:        March 19, 2015                                    s/Marianne O. Battani
                                                              MARIANNE O. BATTANI
                                                              United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on March 19, 2015.

                                                              s/ Kay Doaks
                                                              Case Manager